| | |
|---|---|
| ANGELA D. ESTES,<br><br>                              *Plaintiff,*<br><br>v.<br><br>CHARLOTTESVILLE HOUSING AND<br>REDEVELOPMENT AUTHORITY,<br><br>                             *Defendant.* | CASE NO. 3:06-CV-00033<br><br><br>OPINION AND ORDER<br><br><br>JUDGE NORMAN K. MOON |

      This matter is before the Court on the Defendant's February 7, 2007 Motion to Dismiss. Defendant pleads a statute of limitations defense; Plaintiff responds that the amendments to the complaint which substituted the Charlottesville Housing and Redevelopment Authority (CHRA) for the City of Charlottesville relate back to the original complaint and thus are not time-barred. For the following reasons, this Motion is DENIED.

## I. BACKGROUND

      Plaintiff was an employee of CHRA, working on public housing issues from City Hall in Charlottesville. She filed two charges against CHRA with the EEOC: one alleging racial discrimination and a second alleging retaliation resulting from the first charge (Plaintiff was fired shortly after the first complaint was filed). The Right to Sue letters were mailed on March 23 and September 26, 2006. This action, with the City of Charlottesville as a the defendant, was commenced on June 20, 2006, and the second (retaliation) count was added by amendment to the

complaint on October 29, 2006.

The City timely moved to dismiss on the grounds that it was not Plaintiff's employer, because CHRA was not a department of the city, but a separate municipal corporation created by state statute. Plaintiff at first attempted to proceed against the city on an integrated employer theory, then attempted to amend the complaint to include *both* the City and CHRA, and finally settled on releasing the City and suing only CHRA, in the Third Amended Complaint. However, this complaint was not filed until January 23, 2007, well outside of the 90-day limit found in 42 U.S.C. 2000e-5. Plaintiff concedes that, unless the Third Amended Complaint relates back to the original filing date, her suit will be barred.

## II. DISCUSSION

Relation back is governed by Fed. R. Civ. Proc. 15(c). An amendment changing "a party or the naming of a party" relates back only if 1) it involves the same transaction or occurrence as the original pleading, 2) there is sufficient notice of the action to prevent prejudice, and 3) the new party knew that, but for a mistake, it would have been named in the original complaint.

There is no question that the attempted substitution here involves the same transaction or occurrence. Plaintiff alleges that her employer discriminated against her in numerous ways. The purpose of the changes is to accurately reflect the identity of her employer.

Mere knowledge of–or even active participation in–a lawsuit is inadequate to serve as "notice" in this context. *Keller v. Prince George's County*, 923 F. 3d 30, 33-34 (4th Cir. 1991). After all, a potential defendant may rely on the fact that the suit was filed against someone else, possibly even taking actions to his or her legal detriment. *Id.* Rather, the new defendant must have reason to believe that a substitution such as the one attempted here is likely to occur. *Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir. 1989). On the other

hand, "Notice may be presumed when the nature of the claim is apparent in the initial pleading and the added defendant has either a sufficient identity of interest with the original defendant or received formal or informal notice of the claim." *Id.* This is precisely the case here. As Defendant conceded in its papers, CHRA contracts with the City for the services of its City Attorney. Def. Brief Ex. E, Aff. of Noah Schwartz, (Dkt. # 36). Thus, the same office received the complaint against the City as would have received it had it been filed against the CHRA in the first instance. The City Attorney's office would also be in an excellent position to promptly determine if Plaintiff had been an employee of either the City or its other client, the CHRA. Obviously the City Attorney made that determination, since the City filed a Motion to Dismiss based on exactly that claim a mere 12 calender days after receipt of service. The City Attorney, and therefore its client, the CHRA, should thus have realized that the CHRA was in fact the proper defendant and that a suit against that entity was highly likely. Furthermore, the interest of CHRA in the suit was the same as that of the City: an (alleged) employer facing a Title VII discrimination lawsuit. Both the notice requirement and the knowledge-of-mistake requirement are satisfied.

What remains is the consideration of the meaning of "mistake." Defendant contends that "mistake" is synonymous with "misnomer," so that what amount to clerical errors may be corrected, but the substitution of the correct party, as here, is impossible. Plaintiff counters less with legal argument than with documentary evidence of the reasonableness of the mistake itself.

The argument that "mistake" means "misnomer" cannot be reconciled with the text of the rule itself. Rule 15(c)(3) permits relation back if "the amendment changes the party or the naming of the party against whom a claim is asserted" and the conditions outlined above are met. Clearly, changes to "the naming of the party" are the corrections to misnomers which Defendant

asserts are the sole reason for the rule. This reads the phrase "changes the party" right out of the Rule. It also makes the requirements of notice and lack of prejudice superfluous; if the Rule requires that the correct party be served and brought before the court, and any changes be to the caption only and not to the parties themselves, then there cannot ever be a notice problem. Because changing parties–that is, bringing a new party before the court who was not there before–is explicitly contemplated by the Rule, it is clearly intended to allow for more than mere correction of misnomers.

The Advisory Committee Notes for the 1966 changes also make clear that the Rule can do more than correct misnomers. These Notes state that an "amendment changing the party against whom a claim is asserted relates back" when the requirements of the rule are met. The Notes focus particularly on suits against Federal agencies, which sometimes involve improper parties, parties which are not amenable to suit, or even parties which simply do not exist.[1] These sorts of errors are precisely the sort which, according to the advisory committee, the Rule in intended to correct. None of these corrections involve the mere correction of a misnomer of a party already before the court, and thus that cannot be the sole purpose of the Rule.

Nor do the cases cited by Defendant rule out changes of party. Rather, they merely limit the kind of mistake the Rule corrects to mistakes in identity. In *Western Contracting*, the defendant, Bechtel, sought to counterclaim not only against the corporate plaintiff, but also against individual employees who were not part of the original suit, and to do so after the statute

---

[1] The notes describe Social Security appeals, which at the time were properly brought against the Secretary of Health, Education, and Welfare, which were erroneously brought against the United States (which is subject to suit, but not in this context), the Department of Health, Education and Welfare (which is not subject to suit), and the "Federal Security Agency," which does not exist. The Notes state that the rule is intended to permit these suits to go forward despite these sorts of errors.

of limitations had expired. 885 F.2d at 1200. Its holding is thus is entirely inapposite, for it concerns the *addition* of parties by counterclaim rather than a substitution due to an error in identity. Much confusion has arisen because of the *Western Contracting* court's quote of a Seventh Circuit case, to the effect that relation back is permitted where "there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where, as here, there is a lack of knowledge of the proper party." *Id* at 1201 (quoting *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980)). The relationship of this sentence to the facts underlying the *Western Contracting* decision is by no means clear, as there was never any suggestion that Bechtel had counterclaimed against the wrong people accidentally, or that it was unaware who had allegedly committed the fraud it was alleging. Rather, Bechtel was simply trying to add additional defendants at a late date. To the extent that Plaintiffs allege that this quotation controls the very different case at bar, it is therefore dictum and not binding.

*Keller*, on which Plaintiff leans heavily, bears a close resemblance to *Western Contracting* but very little to this case: the plaintiff sued a state entity without joining the individuals who actually took the actions complained of. *Keller*, 923 F.2d 31-32. It later became clear that this was a strategic mistake, because the state was able to successfully invoke sovereign immunity. *Id.* The attempt to amend the complaint was denied on the grounds that the plaintiff knew all along who the individuals were, and the decision not to sue them was thus best understood as a strategic decision on which those putative defendants were entitled to rely. *Id* at 33-34. Although the attorney had certainly made a mistake, it was mistake of law and strategy, not a mistake *in identity* which the Rule allowed him to correct. *Id.*

Meanwhile, the source for *Western Contracting* quote does not support Defendant. In

*Wood v. Worachek*, the plaintiff sued a number of defendants under 42 U.S.C. § 1983 for alleged police brutality. 618 F.2d 1225. Included were two unknown officers, John Doe and Richard Roe. 618 F.2d at 1227-28. No fewer than *six years* after the filing of suit, the court insisted that these fictitious names be replaced with actual individuals, and the plaintiff responded with not two but four names. *Id* at 1228. The trial court then dismissed these new defendants as failing to meet the requirements of Rule 15. In this light, we see that the *Wood* court meant "lack of knowledge" meant a literal lack of knowledge: the *Wood* plaintiff simply did not know the name, badge number, or other identifying information of his alleged attacker. Suing a non-existent placeholder and hoping to accuse someone specific later is not permitted by the Rule. By contrast, the *Wood* court's holding would not preclude relation back if the plaintiff had erroneously sued the wrong police officer (that is, had made an "error concerning the identity of the proper party"), but had moved to amend after discovering the error, provided that notice and lack of prejudice could be proven.

Part of what *Wood* teaches is that mistakes in identity are not the same as mistakes in name. A simple example may suffice to illustrate the difference. Consider two brothers with a strong family resemblance, John and James Doe. John commits a tort against Bob. If Bob then files suit and serves John under the name John Smith, he has made no error of identity, but he has made an error of name. This can be corrected as a misnomer under Rule 15. On the other hand, if he sues and serves James, he has made a mistake in identity, suing the wrong party. Here, if it can be shown that John knew of the suit–because his brother told him about it–and knew that it should have been him who was sued–because the suit accurately describes a tort John knows he committed–then Rule 15 should allow relation back. On the other hand, if Bob sued James deliberately because he is a "deep pocket" and Bob hoped for a fast settlement, then there was no

mistake and relation back cannot occur. If Bob sued under a fictitious name as in *Wood* and failed to expeditiously discover and serve the correct party, then notice is nearly impossible to achieve (certainly service of a nonexistent defendant is impossible) and relation back will not be allowed. Clearly the notice and prejudice analysis will be critical in any defendant-switching case to ensure that defendants can rely on the statute of limitations as well as their reasonable expectations regarding lawsuits already filed. Plaintiffs should not evade time limits by artful pleading. However, where the notice requirements are met, there is no reason that defendants should be able to take advantage of *in*artful or clumsy pleading by plaintiffs. Such a "sporting theory of justice" is incompatible with the purpose of the Federal Rules in ensuring a just resolution of every action. Fed. R. Civ. Proc. 1.

The policy reason which underlie the Rule's allowance for mistakes in identity are stronger when instead of natural persons, corporate entities are the defendants. Unlike people, who rarely change their names and who retain their DNA and fingerprints for life, corporations are created, destroyed, merged, divided, renamed, and restructured constantly. Some entities are amenable to suit; others can be sued only through corporate parents or through certain natural persons in their official capacity. Tracking the path of liability can be complicated even with access to corporate records. Such access can only be had by plaintiffs after discovery has commenced. Technical errors in such cases must not bar legitimate suits, as both the text of the rule and the Notes to it show..

Defendants cite an unpublished 4th Circuit decision which supports their version of Rule 15. *Rennie v. Omniflight Helicopters, Inc.*, 1998 U.S. App. LEXIS 27050 (4 Cir. 1998). In *Rennie,* two police officers injured in a helicopter crash sued the aircraft maintenance company "HTS, formerly known as Omniflight," erroneously believing HTS to be the successor in interest

to Omniflight. They served both companies. It was later–after the statute of limitations had run–discovered that HTS was in fact a separate company, and the plaintiffs sought to amend their complaint to name Omniflight only. In a divided opinion, the Fourth Circuit endorsed the misnomer-only theory of Rule 15, and upheld district court's refusal to allow the amendment. This case is the only one presented by Defendant which plainly says that Rule 15 is exclusively intended to correct misnomers, and although Plaintiff attempts to distinguish it, its reasoning compels dismissal of this action. Indeed, the *Rennie* plaintiffs had an even stronger claim to relief than Plaintiff does here, as they had literally served Omniflight with a complaint bearing that name. However, the slip opinions of the Fourth Circuit have long bourne the legend, "Unpublished opinions are not binding precedent in this circuit." They thus have at most persuasive value. Mindful of the insight which unpublished opinions can give district courts into the likely outcome of appeals, this Court respectfully declines to follow *Rennie*'s holding. As discussed above, the *Rennie* result is not required by any published Fourth Circuit cases or the plain text of the Rule.

The first Complaint in this case describes the CHRA as a department of the City of Charlottesville. Plaintiff believed she was suing the corporate parent of her direct employer, much as a patient dissatisfied with care at the University of Virginia Hospital does not sue "UVA Hospital," but rather "the Rector and Visitors of the University of Virginia." This was clearly an error in determining the identity of her employer. Counsel for Plaintiff has advanced various explanations for this error, as well as, at times, the theory that the City may actually have some liability on an integrated employer theory. It seems clear that additional diligence was called for in the pre-suit investigation. However, Rule 15 does not make relation back conditional on diligence or competence. It makes it conditional on notice, prejudice, and mistake.

## III. CONCLUSION

Defendants had notice of the pendency of the suit, knew or should have known that they were, but for a mistake, the actual defendants, and have suffered no prejudice. In addition, the mistake is of the kind intended to be corrected by the Rule. For these reasons, the Motion to Dismiss is DENIED.

The Clerk of the Court is directed to send a certified copy of this Order to all counsel of record.

ENTERED: _____
U.S. District Judge

June 1, 2007
Date